ORIGINAL

FILED
OCT 19 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**GRUNLEY-WALSH, LLC**
**(f/k/a Grunley-Walsh Construction JV)** *

**Plaintiff,** *

**v.** *

**THE UNITED STATES OF AMERICA** *

**Defendant.** *

**06-721 C**
**Case No.:**
**Judge:**
**(Survey Lodge Flood Claim)**

* * * * * * * * * * * * *

## COMPLAINT

Plaintiff, Grunley-Walsh, LLC, formerly known as Grunley-Walsh Construction JV, ("Grunley-Walsh"), by its counsel, Roger C. Jones, Esq., of Huddles, Jones, Sorteberg & Dachille, P.C., sues the United States of America ("United States"), and for its Complaint in the above matter, respectfully states as follows:

### Jurisdiction

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 601 *et seq.*

### The Parties

2. Plaintiff, Grunley-Walsh, is a general contractor in the construction industry organized and existing under the laws of the State of Maryland, with its principal place of business located at 5010 Nicholson Lane, Suite 200, Rockville, Maryland 20852.

3. Defendant is the United States of America.

### The Contract

4. On May 6, 1998, the United States, acting by and through the Department of the Interior – National Park Service, awarded Grunley-Walsh an Indefinite Quantity Contract

(Contract No. 1443CX305998901) (the "Contract") to stabilize and preserve the Washington Monument. The Contract is incorporated by reference herein, but is not attached due to its voluminous nature. Defendant has a copy of the Contract in its possession.

5. Pursuant to Contract Modification No. 0007 ("Contract MOD 7"), dated November 15, 2001, the General Provisions to the Contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. A copy of MOD 7 is attached hereto as **EXHIBIT A**. Two of these provisions were the Changes clause (FAR 52.243-04 August 1987) and the Disputes clause (FAR 52.233-01 December 1998).

6. In accordance with the Contract, on December 5, 2003 Grunley-Walsh was issued Task Order No. T3059989135 ("Task Order No. 35") in the amount of $13,993,216. Pursuant to Task Order No. 35, Grunley-Walsh was to construct and install an above ground security barrier system at the Washington Monument. More specifically, Grunley-Walsh was to accomplish work the contained in the Project Requirements (Task Order No. 35, Attachment 1) and specifications and drawings prepared under previous Task Order by the Olin Partnership. A copy of Task Order No. 35, including it's Attachment 1 Project Requirements is attached hereto as **EXHIBIT B**.

7. The drawings and specifications prepared by the Olin Partnership are dated November 25, 2003 and purport to be the 90% Construction Drawings.

**<u>The Certified Claim for Survey Lodge Flood Damage</u>**

8. This action relates to a July 14, 2006 certified claim, in the amount of $183,400, submitted by Grunley-Walsh to the Contracting Officer (the "Certified Claim") pursuant to the Changes clauses and the Disputes clause in the Contract. A copy of the Certified Claim is attached as **EXHIBIT C**.

9. By letter dated September 15, 2006 (attached as **EXHIBIT** D), the Contracting Officer advised that a Final Decision would be issued on the Certified Claim by October 16, 2006. To date, despite the Contracting Officer's letter and despite the fact that more than 90 days has elapsed since submission of the Certified failed, there has been no Final Decision issued on the Certified Claim. As such, the Certified Claim is deemed denied.

**Factual Background for the Certified Claim**

10. To prepare the Project drawings and to identify the work required in Task Order No. 35, the Olin Partnership was issued existing background drawings by the National Park Service.

11. Among other things, the background drawings indicated an underground abandoned heat and power tunnel ("tunnel") running from existing vaults adjacent to the Washington Monument to the outside of the existing Survey Lodge Building, beyond the Contract limit line.

12. Below is an excerpt from the drawings showing the general location of the tunnel:



13. Upon information and belief, the tunnel was built in 1884 and served the steam powered elevator system for the Monument. In 1923, the tunnel was de-activated when the Washington Monument was rewired to receive electricity from a local power company.

14. The existing condition of the tunnel, since de-activation, was unknown to all parties at the time Task Order No. 35 was issued. Further, during design development, the Park Service made no indication the tunnel needed to be preserved or protected when construction started.

15. In addition, the scope of work set forth in Task Order No. 35 required no work in connection with the abandoned power tunnel. It was simply an existing feature on the contract drawings, about which no other information was provided (e.g. whether the tunnel was collapsed and/or filled; the buried depth of the tunnel; where the tunnel was terminated; how the tunnel was terminated; the size of the tunnel; and any necessary precautions that might arise because of the tunnel).

16. As required by contract, work on the project was shut down during the July 4, 2004 holiday weekend. At this point in time, the ongoing work activities included certain grading work in the vicinity of the abandoned power tunnel. At no time, however, did the grading work ever disturb the underground tunnel which was located several feet (below the surface) beneath the grading operation.

17. While the project was shut down during the July 4, 2004 holiday weekend, the project itself was subjected to an extraordinary rain storm; causing considerable local flooding. After the rainstorm, several inches of water and silt intrusion was discovered in the basement level of the Survey Lodge.

18. By email dated July 6, 2004 (attached to the Certified Claim (included in The Certified Claim at **EXHIBIT 3**), the National Park Service provided to Grunley-Walsh a Contracting Officer Directive No. 1 – Survey Lodge Cleanup ("Directive No. 1") (included in The Certified Claim at **EXHIBIT 4**) and a Contracting Officer Directive No. 2 – Tunnel Opening ("Directive No. 2") (included in The Certified Claim at **EXHIBIT 5**).

19. Both Directives Nos. 1 and 2 indicated they were being issued pursuant to the Changes clause in the Contract. As such, Grunley-Walsh expected an equitable adjustment to be issued for any additional costs and time involved in the performance of the change work outlined in the Directives.

20. Directive No. 1 essentially required the assessment, cleanup and remediation of the Survey Lodge due to the damage caused by the water and silt intrusion.

21. Directive No. 2 required Grunley-Walsh to expose and open a portion of the abandoned power tunnel in order to allow access for the determination of any necessary repairs to the tunnel. In issuing this directive, the Contracting Officer expressly acknowledged:

> Due to the unknown condition of the steam tunnel, NPS acknowledges that damage due to factors other than Grunley-Walsh's own negligence during this work will remain the responsibility of the NPS.

22. When Grunley-Walsh began performance of the change work, they learned the abandoned heat and power tunnel terminated in the basement of the Survey Lodge building. At the tunnel point of termination, a metal access door existed. When the flood damage was discovered in the basement of the Survey Lodge, the access door was found in an open position.

23. Grunley-Walsh did not open the metal access door to the tunnel. Further, to Grunley-Walsh's knowledge no one witnessed the opening of the tunnel access door and no one witnessed where/how the water and silt intruded into the basement of the Survey Lodge. As

such, to Grunley-Walsh's knowledge, no one witnessed the water and silt intrusion into the basement via the tunnel opening at the metal access door.

24. Likewise, if in fact water did enter the abandoned power tunnel, to Grunley-Walsh's knowledge, no one witnessed how or where the water may have entered the abandoned power tunnel.

25. In examining the abandoned power tunnel pursuant to Directive No. 2, Grunley-Walsh learned it was a masonry/brick structure with french drains located at either side of the structure where the walls met the floor. The french drains did not appear connected to any sewer system.

26. The investigation performed by Grunley-Walsh also revealed numerous existing cracks in the masonry walls of the 120 year old abandoned underground tunnel. However, no visible damage to the abandoned tunnel was observed to be the result of the ongoing existing grading operations above the tunnel. Further, if water from the July 4, 2004 rain storms flooded the abandoned tunnel, there was no discernable evidence where/how such flooding would have occurred and/or how flooding would have entered the Survey Lodge basement via the tunnel.

27. The change work required by the Contracting Officer's Directive Nos. 1 and 2 has been fully performed and completed.

28. The Changes clause requires an equitable adjustment for the cost of the change work Grunley-Walsh and its subcontractors have performed pursuant to the Contracting Officer's Directive Nos. 1 and 2.

29. On October 5, 2005, Grunley-Walsh submitted its request for an equitable adjustment in the amount of $183,409 to the Contracting Officer for the work performed pursuant to Directive Nos. 1 and 2 ("Request for Equitable Adjustment). A copy of the Request

for Equitable Adjustment is included in The Certified Claim at **EXHIBIT 1.** The additional costs and supporting documentation for the change work are also included in **EXHIBIT 1**.

30. In an undated letter received by Grunley-Walsh, in or about late January 2006, the National Park Service expressed the Government's position that the Survey Lodge damage repair "work was caused by a storm event during construction and the consequences are the responsibility of the contractor." A copy of this letter is included in The Certified Claim at **EXHIBIT 2**.

31. Pursuant to the Contract's Dispute clause and the Contract Disputes Act, on July 14, 2006, Grunley-Walsh submitted its Certified Claim requesting a Contracting Officer's Final Decision on the matter.

32. All conditions precedent for the filing of this action have been satisfied, waived and/or excused.

**COUNT I**

33. The allegations contained in paragraphs 1 through 32 above are incorporated by reference as through fully set forth herein.

34. Pursuant to the Contract, Grunley-Walsh is entitled to an equitable adjustment in the amount of $183,409 for the additional cost to perform the change work required by Directive Nos. 1 and 2.

35. As such, the Government is liable to Grunley-Walsh for $183,409 plus interest thereon as allowed by the Contract Disputes Act.

**WHEREFORE**, Plaintiff, Grunley-Walsh, LLC, demands judgment against Defendant, The United States of America, for award of damages in the amount of $183,409, plus such other

and further relief as this Court deems just and proper, including interest as required by the Contract Disputes Act.

Respectfully submitted,

Roger C. Jones

**HUDDLES, JONES**
**SORTEBERG & DACHILLE, P.C.**
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
(301) 621-4120
(301) 621-4473 (fax)
jones@hjpc.com

Counsel for Plaintiff,
Grunley-Walsh, LLC

DATED: 10/19/2006