# EXHIBIT 6

COPY

9

RECEIVED
JAN 17 2007
DSC
CONTRACTING SERVICES

Grunley-Walsh

5010 Nicholson Lane, Suite 200
Rockville, MD 20852

# Washington Monument Physical Security System
# Contract No. 1443CX305998901; Task Order No. 35

## Certified Claim/Request For Equitable Adjustment to Contract Amount
## Lodge Window Mock-Up - $15,242

## Request For Contracting Officer's Final Decision



**Submitted: January 12, 2007**

Grunley-Walsh
5010 Nicholson Lane, Suite 200
Rockville, MD 20852

RECEIVED
JAN 17 2007
DSC
CONTRACTING SERVICES

January 12, 2007

United States Department of
The Interior – NPS
Denver Service Center
12795 W. Alameda Parkway
P.O. Box 25287
Denver, Colorado 80225-0287
**ATTN: John M. Fox, Contracting Officer**

**RE: Washington Monument Physical Security System**
**Contract No. 1443CX305998901; Task Order No. 35**

**Subj: Certified Claim/Request For Equitable Adjustment to Contract Amount**
**Lodge Window Mock-Up - $15,242**

**Request For Contracting Officer's Final Decision**

Dear Mr. Fox:

Reference is made to our contract for the above Project as well as to Task Order No. 35. Reference is also made to our prior cost submissions for additional work stemming from the change directive to remove an existing window, to remove an existing block filled window space and to provide a new window mock-up. Despite the fact there is no dispute this constituted change work, to date the submitted costs remain unpaid. The unpaid additional cost to perform this change work totals **$15,242.**

Grunley-Walsh is herewith submitting these unpaid additional costs as a Certified Claim / Request For Equitable Adjustment ("REA") in accordance with the Contract Disputes Clause and the Contract Disputes Act. Attached as **EXHIBIT 1** is a complete itemization as well as supporting cost data for the additional costs requested herein. In submitting these claimed costs, we request a Contracting Officer's Final Decision on this matter within 60 days.

**Entitlement Overview**

On May 6, 1998 Grunley-Walsh was awarded an Indefinite Quantity Contract to stabilize and preserve the Washington Monument (Contract No. C3059980901). Pursuant to Contract Modification No. 0007, dated November 15, 2001, the General Provisions to our original contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. Three of these provisions included the Changes clause (FAR 52.243-04 August 1987), the Disputes clause (FAR 52.233-01 December 1998) and the Differing Site Conditions clause (FAR 52.236-02 April 1986).

In accordance with the Contract, on December 5, 2003 Grunley-Walsh was issued Task Order No. T3059989135 (Task Order No. 35) in the amount of $13,993,216. Among other things, Task Order No. 35 required Grunley-Walsh to construct and install an above-ground security barrier system in accordance with certain specifications and drawings prepared under a previous Task Order by the Olin Partnership.[1] This included the construction of elements contained on NPS Drawing No. 807-41032. These drawings included the 90% construction documentation that existed as of November 2003. To prepare these drawings and to identify the work required in Task Order No. 35, the Olin Partnership was issued existing background drawings by the National Park Service.

As the Park Service is aware, the Monument Lodge area of the project was always considered not in contract (i.e. "NIC"). This was due to the fact the plans for a proposed visitor center in the area of the Monument Lodge were still pending at the time Task Order No. 35 was issued. As such, the Task Order No. 35 contract drawings identified the Monument Lodge area as NIC:

[1] The Olin Partnership was Grunley-Walsh's design consultant for the work required in Task Order No. 35.




11/25/03 Contract Drawing Excerpt – Sheet L5.4

When the Park Service finally decided not to proceed with the proposed visitor facility, Modification No. 6 was issued to Task Order No. 28 requiring A/E services be provided for the repair and rehabilitation of the existing Monument Lodge. With regard to the exterior of the Monument Lodge, the Park Service subsequently decided to proceed with the cleaning and point-up of the existing stone façade.[2] The Park Service also wanted to evaluate replacement windows for this historic structure.

On March 25, 2005, a meeting was conducted at the project site with the designers and the Park Service's representative (Alpha Corporation) to discuss the work that was to proceed (a

[2] Modification No. 7 to Task Order No. 35, provided compensation for the stone cleaning and point-up work.

copy of Grunley-Walsh's Meeting Minutes are attached as **EXHBIT 2**). At the meeting, it was decided the exterior stone cleaning and window work could proceed ahead of the interior renovations. For the window work, the designer (i.e. Architrave PC, Architects) advised some selective demolition at the old window openings was required. See Architrave PC Meeting Minutes attached as **EXHIBIT 3**. In addition, the subcontractor providing the new window mock-up, indicated existing CMU blocks would have to be removed in order to obtain field measurements for the new window mock-up (see AV Smoot Memo dated March 29, 2005, copy attached as **EXHIBIT 4**).

It was agreed at the March 25, 2005 meeting the new widow mock-up was necessary to allow Park Service approval on the replacement windows to be installed and to prepare shop drawings for fabrication of additional windows. The picture below depicts the mock-up window as it was being installed:







Lodge Window Mock-Up Work After Completion

**Quantum Overview**

The additional costs sought in this claim is for demolition work performed by Grunley-Walsh, in the amount of $1,190 and window mock-up work performed by our subcontractor, AV Smoot, LLC, in the amount of $12,283, which Grunley-Walsh has paid. After allowed mark-ups are added to these direct costs, the total amount claimed is $15,242.

**Certification**

Although this claim is less than $100,000, since the aggregate of claims Grunley-Walsh has submitted on this project exceed $100,000, this certification is provided in accordance with the Contract Disputes Act:

I certify that this claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amounts requested accurately reflect the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor.

Sincerely,

**GRUNLEY-WALSH, LLC.**

Bassem Soueidan
Operations Manager

Enclosures
cc: Roger C. Jones, Esquire (w/encls.)